**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
RENE MALEK and AMAL MALEK,    :
                              :
        Plaintiffs,           :
                              :
v.                            :  Civil No. 3:06CV01092(AWT)
                              :
UNITED TECHNOLOGIES           :
CORPORATION, CARRIER          :
CORPORATION, GERAUD DARNIS,   :
PATRICK L'HOSTIS, MURIEL      :
MAKHARINE, GREGG B. RIFFLE,   :
MOUAYYAD MASSAD, JOHN and     :
JANE DOES 1-100 and ABC and   :
XYZ CORPORATIONS,             :
                              :
        Defendants.           :
                              :
------------------------------x
```

## **RULING ON MOTION TO DISMISS**

Plaintiffs Rene Malek ("Mr. Malek") and Amal Malek bring this action against United Technologies Corporation ("UTC"), Carrier Corporation, Geraud Darnis, Patrick L'Hostis, Muriel Makharine, Gregg Riffle, Mouayyad Massad, John and Jane Does 1-100 and ABC and XYZ Corporations. They have filed a 12-count complaint alleging, among other things, wrongful discharge because of age. The defendants have moved to dismiss certain of the plaintiffs' claims. For the reasons set forth below, the defendants' motion is being granted, but the plaintiff is being given leave to conduct discovery with respect to jurisdictional issues and to amend the complaint with respect to defendant Riffle and the Second, Third and Twelfth Counts.

**I.  Factual Allegations and Procedural Background**

Mr. Malek was employed by Carrier from 1974 to 1981.  He began as a sales representative in Beirut, Lebanon and eventually obtained a position in Syracuse, New York.  From 1981 to June 1995, Mr. Malek worked in New Jersey for other companies.  From June 1995 to March 1996, Mr. Malek was employed by Carrier in Saudi Arabia.  In March 1996, Mr. Malek accepted a position with the National Trading Corporation ("NTC"), and between March 1996 and January 2005, he was employed by UTC and Carrier in Beirut, Lebanon as the general manager of NTC Lebanon.  Mr. Malek signed a letter agreement regarding his employment on May 22, 1996.  The letter agreement provides that "[t]his assignment letter shall be governed by and construed in accordance with the Laws of the US." (Complaint, at Ex. A).  Beginning in April 1997, Mr. Malek also served as a Director of Distribution in the Middle East.  In January 2000, Mr. Malek was promoted to Vice President of the Middle East for Carrier, effective March 1, 2000.

Mr. Malek asserts that he "was employed by a corporation that does extensive business in New Jersey and maintains eight offices within the State." (Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss ("Plaintiffs' Opposition") (Doc. No. 39), at 6-7).  Mr. Malek also asserts that he was domiciled in New Jersey when this action was filed and that he was domiciled in New Jersey throughout his employment with Carrier

because he "never intended to make [Saudi Arabia or Lebanon his] home on a permanent basis, nor did [he] ever abandon New Jersey as [his] domicile." (Plaintiffs' Opposition, Ex. A, at ¶ 4). During his employment, the company "charge[d] him a hypothetical tax as if he lived in the United States and [] [paid] all of his state and federal taxes." (Complaint, at ¶ 30). Moreover, Mr. Malek's salary was initially deposited directly to his bank account in New Jersey. Mr. Malek "maintained ownership of [the plaintiffs'] New Jersey home until approximately 2002." (Plaintiffs' Opposition, Ex. C, at ¶ 5).

In December 2004, a UTC internal audit exposed problems with the Carrier operation in the United Arab Emirates. "[T]he UTS Carrier joint venture became the central figure of an investigation involving improprieties in payments that were being paid." (Complaint, at ¶ 81). The plaintiffs allege that Mr. Malek was wrongfully criticized and that "a plethora of . . . false accusations were leveled against plaintiff pursuant to the unfair, threatening, and accusatory investigation conducted by defendant Riffle." (Complaint, at ¶ 108). In a letter dated January 19, 2005, defendant L'Hostis and defendant Makharine informed Malek that UTC, Carrier, and CMEL had decided to terminate his employment contract. The letter stated that an audit had discovered "irregularities" in finance procedures. (Complaint, at ¶ 116). Defendant Darnis, President of Carrier,

3

allegedly ordered the plaintiff's termination. Patrick L'Hostis was Mr. Malek's direct supervisor, and allegedly "ratifi[ed] and orchestrat[ed] plaintiff's termination." (Complaint, at ¶ 11). Mr. Malek states that Riffle, an employee of Carrier based at its headquarters in Syracuse, New York, "led the biased and grossly negligent investigation which led to my wrongful termination." (Plaintiffs' Opposition, at Ex. C, at ¶ 13).

The plaintiffs filed this case in the District of New Jersey. There, the defendants moved to dismiss the case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and moved to dismiss certain claims in the complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (6). The court transferred the case to this district.

**II. Legal Standard**

A.  <u>Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). <u>See also</u> <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984). "The

4

function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dept. Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999), quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

    B.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, the court applies the same standard as with motions to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue]. But if the court holds an evidentiary hearing . . . the plaintiff must demonstrate [venue] by a preponderance of the evidence." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (citing CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 364-65 (2d Cir. 1986)). "The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. American Telecasting,

Inc., et al., 261 F.3d 196, 208 (2d Cir. 2001). "A plaintiff can make this showing through his 'own affidavits and supporting materials[,]' . . . containing 'an averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant.'" Id. (citations omitted). "'[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]'" Id. (citation omitted).

**III. Discussion**

    A.   <u>Individual Liability under the ADEA</u>

The defendants argue that the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq., (the "ADEA") does not provide a cause of action against individuals. The plaintiffs agree. (Plaintiffs' Opposition, at 8).

    B.   <u>New Jersey Law Against Discrimination ("NJLAD") Claims</u>

The defendants argue that Second and Third Counts should be dismissed because the NJLAD does not apply to this case. "'[I]t is well-established in New Jersey that claims of a New Jersey resident, relating to his out-of-state employment, are governed by the law of the state in which that New Jersey resident is employed.'" Brunner v. AlliedSignal, Inc., et al., 198 F.R.D. 612, 614 (D. N.J. 2001) (citation omitted). See Norris v. Harte-Hanks, Inc., 122 Fed. App'x. 566, 568 (3d Cir. 2004) (citing Brunner with approval and explaining that D'Agostino v. Johnson &

Johnson, Inc., 133 N.J. 516 (1993) utilized New Jersey law based on the fact that the alleged conduct occurred in New Jersey); Weinberg v. Interep Corp. and Anger, No. 05-5458(JBS), 2006 WL 1096908, at *6-7 (D. N.J. Apr. 26, 2006) (dismissing NJLAD claim where New Jersey resident was employed by a New York company in its Pennsylvania office and low percentage of plaintiff's sales were to New Jersey client); Satz v. Taipina and Novartis Pharmaceuticals Corp., No. CIV.A. 01-5921(JBS), 2003 WL 22207205, at *16 (D. N.J. Apr. 15, 2003) ("New Jersey courts have consistently applied the law of the state of employment to workplace claims, and have therefore only applied the NJLAD if the plaintiff worked in New Jersey."); Buccilli v. Timby, Brown & Timby, 660 A.2d 1261, 1263 (N.J. Super. A.D. 1995) ("Plaintiff's employment began and ended in Pennsylvania. She worked exclusively in that state and the conduct which she alleges was unlawful occurred there. Only Pennsylvania, not New Jersey, substantive law governs her claims.").

The plaintiffs cite to Robinson v. Sizes Unlimited, Inc., 685 F.Supp. 442 (D. N.J. 1988), where the court determined that "in light of the fact that Robinson is a New Jersey resident and Sizes Unlimited is headquartered in Secaucus, and it also operates stores throughout New Jersey, it appears that the New Jersey Supreme Court would apply the NJLAD to Robinson's claim of age discrimination even though he was employed in New York." Id.

7

at 448. However, Robinson was decided prior to Brunner, Norris, Weinberg, Satz, and Buccilli. The plaintiffs also cite to D'Agostino v. Johnson & Johnson, Inc., 133 N.J. 516 (1993), where the New Jersey Supreme Court held that New Jersey law applied where a plaintiff brought suit for wrongful termination based on refusal to pay a bribe. Although the plaintiff was a resident of Switzerland with U.S. citizenship, the court noted that the "[p]laintiff's firing followed shortly after a meeting at J & J corporate headquarters in New Jersey at which the unsuccessful registration of a drug was discussed." Id. at 536. The court characterized that case as "not a case in which New Jersey seeks to regulate access to its courts by nondomiciliary plaintiffs; here it seeks to affect what is done in New Jersey by a domiciliary corporation." Id. at 538. The court noted that "[h]ere we are not exporting New Jersey employment law so much as applying New Jersey domestic policy, drawn from federal sources, to a domestic company. . . . Rather, New Jersey law regulates conduct in New Jersey, such as J & J's alleged orchestration of the bribing of a foreign official and firing of plaintiff." Id. at 539-40. The court cautioned, "we do not export New Jersey employment law to the overseas subsidiaries of domestic corporations. We incorporate a domestic policy intended to affect, at most here, conduct in New Jersey that has a forbidden extraterritorial effect." Id. at 545. Thus, the conduct alleged

in D'Agostino occurred in New Jersey, while none of the conduct alleged in the instant case occurred in New Jersey.

The plaintiffs contend that they were and continue to be domiciled in New Jersey, but Mr. Malek's relevant employment was based solely overseas and the plaintiffs allege that the decision to terminate Mr. Malek's employment was made in Connecticut. While the plaintiffs allege that the corporation "does extensive business in New Jersey and maintains eight offices within the State", (Plaintiffs' Opposition, at 7), Mr. Malek's employment was not in any of those offices. Moreover, Mr. Malek does not allege that he had clients in New Jersey or that he spent any time working in New Jersey during the course of his employment. Accordingly, the court concludes that the NJLAD claims in the Second and Third Counts must be dismissed, but the plaintiffs are given leave to amend those counts to plead causes of action under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, et seq. ("CFEPA").[1]

---

[1] The parties appear to agree that Lebanon's employment law should not apply to the Second and Third Counts, which allege age discrimination and a hostile work environment. The defendants argue that "[s]ince the injury to Mr. Malek unquestionably occurred in Lebanon, it would be irrational to apply that sovereign's laws to a U.S. citizen's claims against U.S.-based entities and individuals pending in a U.S. court." (Defendant's Reply Memorandum of Law in Support of Motion to Dismiss (Doc. No. 42), at 5, n. 3). The plaintiffs point to the employment agreement, which provides that "[t]his assignment letter shall be governed by and construed in accordance with the Laws of the US." (Plaintiffs' Opposition, at Ex. B).

C.  Twelfth Count: Loss of Consortium

The defendants argue that because one cannot recover for loss of consortium under the ADEA (see Moss v. Stinnes Corp., et al., 169 F.3d 784, 785 (2d Cir. 1999)), the Twelfth Count should be dismissed.  While the plaintiffs concede this point, they argue that the claim for loss of consortium is brought pursuant to causes of action in addition to ADEA and only the defective portion of the claim should be dismissed.  The court agrees.  The plaintiffs will be permitted to amend the complaint to make it clear that they do not seek to recover for loss of consortium pursuant to the ADEA.

D.  Personal Jurisdiction over Defendant Riffle

1.  Long-Arm Jurisdiction over Defendant Riffle

Defendant Riffle argues that the plaintiff has failed to establish that there is jurisdiction over him in this district. "On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2d Cir. 2003). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Id. at 206.

"In deciding a question of personal jurisdiction, district courts must conduct a two-part analysis, looking first to the

state's long-arm statute and then analyzing whether jurisdiction comports with federal due process." Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 37 (2d Cir. 2001). The Connecticut long-arm statute provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (1) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Conn. Gen. Stat. § 52-59b. For "general personal jurisdiction", the plaintiff would need to show "'continuous and systematic' contacts" with the forum state. U.S. v. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2d Cir. 2001). For "limited" or "specific" jurisdiction, however, "the required minimum contacts exist where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." Id. at 152 (citation omitted).

11

While the plaintiffs acknowledge that they bear the burden of establishing jurisdictional facts, they offer only speculation in response to the defendants' challenge. In Plaintiffs' Opposition, they state that "it appears highly likely from the facts alleged in the Complaint that defendant Riffle had interactions with defendant Makharine and others in Connecticut with respect to the specific issues that led to Rene Malek's termination." (Plaintiffs' Opposition, at 11). The plaintiff alleges that Carrier's "world headquarters" is in Farmington, Connecticut. (Plaintiffs' Opposition, at 10). In the complaint, the plaintiffs also allege an unlawful conspiracy among Riffle and others who worked at the Connecticut office. The plaintiffs have failed to make a prima facie showing that the court can exercise personal jurisdiction over defendant Riffle, but the court is giving the plaintiffs leave to engage in limited jurisdictional discovery. See, e.g., Magnetic Audiotape Antitrust Litigation, 334 F.3d at 208 (district court should not have dismissed case prior to allowing discovery where plaintiff had alleged facts to "arguably would satisfy the 'effects' test frequently used in the analysis of specific personal jurisdiction" and pointed to facts that might show general personal jurisdiction). Although the plaintiffs here have not set forth factual allegations as well founded as those in Magnetic Audiotape Antitrust Litigation, the court takes into

12

account the fact that the complaint was drafted to be filed in the District of New Jersey. Accordingly, the plaintiff is being given 60 days to conduct jurisdictional discovery with respect to defendant Riffle.

    2.   <u>Improper Service</u>

Defendant Riffle also argues that because service was made on a paralegal in his office who was not authorized to accept service on his behalf, he was not properly served in this action and consequently, the court does not have personal jurisdiction over him.

Fed. R. Civ. P. 4(e)(1) provides that proper service can be made in accordance with the law of the forum state or pursuant to the law of the state where the defendant is located. The forum state is Connecticut and defendant Riffle is located in New York. Under Connecticut law, service can be made on a nonresident by leaving process with the Secretary of the State's office and sending a copy to the defendant at his last-known address. Conn. Gen. Stat. § 52-59b. Under New York law, service can be made through personal service or "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be

served at his or her actual place of business . . . ." N.Y. C.P.L.R. § 308(1) and (2). If service pursuant to § 308(1) and (2) "cannot be made with due diligence," service can be made "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode . . . and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . ." N.Y. C.P.L.R. § 308(4).

Fed. R. Civ. P. 4(e)(2) provides that, alternatively, service can be made "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2).

It appears that the paralegal in Syracuse was not appointed as an agent and therefore service was not properly made. However, it also appears that the plaintiffs were led to believe that the paralegal was an agent authorized to accept service on behalf of defendant Riffle. (See Plaintiffs' Opposition, at Ex. E, at ¶ 4 and accompanying Receipt for Process Server). Accordingly, the plaintiffs are being given the opportunity to

make proper service on defendant Riffle if, after engaging in discovery as to jurisdictional issues, the plaintiffs elect to proceed against defendant Riffle.

**IV. Conclusion**

For the reasons set forth above, the defendants' Motion to Dismiss (Doc. No. 25) is hereby GRANTED. The plaintiffs may file an amended complaint setting forth claims, in the Second and Third Counts, under CFEPA and specifying which causes of action serve as the basis for the loss of consortium claim. Also, the plaintiff is given 60 days to conduct jurisdictional discovery with respect to defendant Riffle. If, after conducting such discovery, the plaintiffs still wish to pursue a claim against defendant Riffle, they must file an amended complaint setting forth the basis for personal jurisdiction over this defendant. The plaintiffs' amended complaint must be filed within 90 days and if it names Riffle as a defendant, they must make proper service on defendant Riffle within 30 days of filing the amended complaint.

It is so ordered.

Dated this 18th day of August 2007 at Hartford, Connecticut.

　　　　　　　　　　／s／AWT　　　　
Alvin W. Thompson
United States District Judge
